**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CAROLINAS MEDICAL CENTER-NORTHEAST**<br>200 Medical Park Drive<br>Concord, NC  28025<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**ROBERT F. KENNEDY, JR.**, In his<br>Capacity as Secretary of the U.S.<br>Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

**COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION**
**ON MEDICARE REIMBURSEMENT**

**INTRODUCTION**

1.   This civil action is brought by Carolinas Medical Center - Northeast (hereinafter "Plaintiff," "Provider," or "Plaintiff Hospital") against the Secretary for the United States Department of Health and Human Services ("HHS")[1] for judicial review of a final decision rendered on March 24, 2026 by the Provider Reimbursement Review Board ("PRRB" or "Board"), a component of HHS. Judicial review is sought arising from the Board's dismissal of PRRB Case Nos. 25-4260 and 25-4261 (hereinafter collectively called, "Plaintiff's appeals). The basis for this lawsuit is the Secretary's and Board's unconscionable dismissal of Plaintiff's appeals for its failure to timely comply with the Board's procedures, despite undisputable fact that the city in which Plaintiff's designated representative's corporate office was physically located, to wit: Arcadia, California was at relevant times under orders of evacuation by local law enforcement officials and for weeks thereafter, unable to return its full staff to anything resembling normal working hours as a consequence of the devasting Los Angeles county wild fires, a portion of which was blazing in very close proximity to the aforementioned representative's corporate offices. Plaintiff Hospital specifically challenges the Board's dismissal of its' administrative appeals in light of the terminating actions taken by the Board which were arbitrary, capricious and a violation of the rightful and allowing claims of Plaintiff.

2.   Also as set forth more fully below, Plaintiff objects in particular to the Board's dismissal of Plaintiff's appeals as demonstrating a clear showing of its bad faith exercise of its discretion, which, under its own Board Rule 47.3, it may reinstate a case dismissal for failure to comply with its procedures upon the Provider's, "written motion demonstrating good cause…"

---

[1] The Secretary is the proper Defendant in this appeal. *See* 42 C.F.R. § 405.1877(a)(2).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**JURISDICTION AND VENUE**

3.    This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the "Act", and the Administrative Procedure Act, 5 U.S.C. § 706.

4.    This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. § 1331, and 28 U.S.C. § 1361. Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. §1391(e).

5.    Further, this Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. §1331, and 28 U.S.C. §1391(e) because:

   a.    Plaintiff Provider filed its cost reports for FYE 06/30/2007 and 12/31/2007 as required by 42 U.S.C. §1395oo(a);

   b.    Plaintiff Provider was dissatisfied with its fiscal intermediary's final determinations, "…as to the amount of total program reimbursement due the provider… for the period covered by such report," as required by 42 U.S.C. §1395oo(a)(2);

   c.    The amount in controversy for Plaintiff Provider's appeals exceed $10,000, as required by 42 U.S.C. §1395oo(a)(3);

   d.    Plaintiff Provider timely filed its appeals with the PRRB pursuant to 42 U.S.C. §1395oo(a)(3);

   e.    The Board effectively dismissed Plaintiff Provider's appeals by notifying it on March 20, 2025 that its appeals had been dismissed;

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

f.  This civil action is filed within sixty (60) days of the date that Plaintiff Provider was notified by the Board, in writing that its appeals were dismissed as evidenced by the Board's letter dated March 24, 2026. (**Exhibit A**).

6.  Plaintiff has exhausted all administrative remedies under federal law.

7.  This timely action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare Act"), 5 U.S.C. §§ 706 *et seq.* (the Administrative Procedure Act or "APA"), 28 U.S.C. § 1361 (mandamus), and other authorities. The Medicare payments here pertain to how inpatient hospital days should be counted for purposes of calculating the Plaintiff Hospital's Medicare Disproportionate Share Hospital ("DSH") payments for the fiscal years ("FY") ending on June 30, 2007 and December 31, 2007.

## PARTIES

8.  Plaintiff hospital, located at 200 Medical Park Drive, Concord, NC had at all relevant times a Medicare provider agreement and was eligible to participate in the Medicare program under Provider No. 34-0001. At all times during the relevant time periods pertinent to this complaint, Plaintiff furnished inpatient and outpatient hospital services to Medicare patients.

9.  Defendant has offices at 200 Independence Avenue, SW, Washington DC 20201 and is the federal officer responsible for the administration of the Medicare program. As such, Defendant Robert F. Kennedy, Jr. is sued in his official capacity as Secretary of HHS.

## GENERAL BACKGROUND OF THE MEDICARE PROGRAM

10.  The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. § 1395c. The Medicare program is federally funded and administered by the Secretary through CMS and its contractors. 42 U.S.C. § 1395kk(a); 42 Fed. Reg. 13,262 (Mar. 9, 1977). CMS implements the Medicare program, in part, through

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

rulemaking. *See* 42 C.F.R. § 401.108. In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes other interpretative rules implementing the Medicare program, which are usually compiled in CMS manuals. The Secretary also issues other sub-regulatory guidance which generally do not have the force and effect of law. This civil action involves Medicare Part A. Part A provides coverage and payment for, among others, inpatient hospital services on a fee-for-service basis. 42 U.S.C. §§ 1395c to 1395i-6. Such items/services are furnished to Medicare beneficiaries by providers of services, including hospitals, that have entered into written provider agreements with the Secretary pursuant to 42 U.S.C. § 1395cc. Providers are paid (reimbursed) by CMS through MACs. *See* 42 U.S.C. § 1395kk-1(a).

11.    Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395kk-1(a)(3)(B). The amount of Medicare Part A payment owed to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS. *See* 42 C.F.R. § 405.1803.

12.    Effective with cost reporting years beginning on or after October 1, 1983, hospitals are reimbursed under the Hospital Inpatient Prospective Payment System ("IPPS") for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F).

13.    Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

result in part from the poorer health of those patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing such services.

14.    Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. § 1395ww(d)(5)(F). The DSH program was in effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

15.    There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" and the less common "Pickle method." *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I)-(II). Plaintiff Hospital's DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on a hospital's disproportionate patient percentage (hereinafter, "DPP"). 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vi).

16.    The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). 42 U.S.C. § 1395ww(d)(5)(F)(vi). Thus, the two fractions serve as a "proxy" of a hospital's low-income patients, rather than having CMS count the actual number of those patients.

17.    The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients whilst *also* being entitled to Supplemental Security Income ("SSI") benefits, a federal low-income supplement. The Medicare Fraction is defined by statute as follows:

/ / / /

/ / / /

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

[T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.

18.    The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

[T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

19.    The Medicaid Fraction, therefore, is intended to account for hospital inpatients "…who were not entitled to benefits under [Medicare] [P]art A," who were "…eligible for medical assistance…" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital.

### THE RELEVANT MEDICARE APPEALS PROCESS

20.    At the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. For Medicare, each hospital's MAC is required to analyze and audit the hospitals annually submitted Medicare cost report and issue a Medicare Notice of Amount of

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital also is required to make a claim, or alternatively self-disallow, for any modification to its basic IPPS payment adjustment, such as the DSH adjustment.

21.    The Medicare Act provides that if a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in its NPR, and the hospital satisfies the amount in controversy requirements (not an issue in this case), the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of receiving its NPR (or any revised NPR). 42 U.S.C. § 1395oo(a). The statute allows a hospital that is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of 42 U.S.C. § 1395ww to obtain a PRRB hearing by requesting the hearing within 180 days after notice of the Secretary's final determination. 42 U.S.C. § 1395oo(a)(1)(A)(ii), (a)(3).

22.    The regulations interpret the statutory requirements by stating that "…the date of receipt by the Board of the provider's hearing request must be no later than 180 days after the date of receipt by the provider of the final contractor or Secretary determination." 42 C.F.R. § 405.1835(a)(3).

23.    In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction and procedure. The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877. The Secretary has delegated authority under the statute to review PRRB

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

decisions to the CMS Administrator. Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

24.    A hospital may obtain judicial review by filing suit in the U.S. District Court for the judicial district in which the hospital is located within 60 days of receipt of the Secretary's final administrative decision. 42 U.S.C. § 1395oo(f)(1). Pursuant to 42 C.F.R. § 405.1801(a)(1)(iii), the date of receipt by a party involved in proceedings before the PRRB is presumed to be five days after the date of issuance of a PRRB document. As such, the deadline in this case to seek judicial review is May 28, 2026. This filing is therefore timely.

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

25.    Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "...shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "...reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "...reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

## FACTS SPECIFIC TO THIS MATTER

26.    The PRRB received notice of Plaintiff's two individual case appeals (assigned Case No. 25-4260 and 25-4261) on April 8, 2025. The issues appealed in each case were identical, the sole reason for two individual case appeals having been established was due to a change in Plaintiff's fiscal year for 2007, the first case appeal for FYE 06/30/2007 and the second case appeal for FYE

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

12/31/2007. For purposes of this complaint, Plaintiff will refer to issues appealed and circumstances arising therein leading to the dismissals by the Board for both case appeals as if referring to a singular case.

27.    Each of Plaintiff's individual appeals included the following issues:

- DSH Medicaid Eligible Days
- DSH SSI Unduly Narrow Definition of SSI Entitlement ("Unduly Narrow")
- DSH SSI & MCD Fractions Medicare Managed Care Part C Days ("Part C Days")
- Improper Rulemaking- DSH SSI Fraction Dual Eligible Days (SSI Fr. DE Days")
- Improper Rulemaking- DSH Medicaid Fraction Dual Eligible Days (Medicaid Fr. DE Days")

28.    On September 25, 2024, the CMS fiscal intermediary, presently referred to as the Medicaid Administrative Contractor ("MAC") issued its Notice of Program Reimbursement ("NPR") to Plaintiff for each of the two fiscal years on appeal. Because the two appeals were being filed beyond the regulatory filing deadline, Plaintiff's designated representative, Quality Reimbursement Services ("QRS") simultaneously filed a Request for Good Cause Extension of its appeals (*see,* the Board's "Denial of Good Cause for Late Filing and Dismissal of Issues from CIRP Groups" dated March 24, 2026, a copy attached hereto as **Exhibit A**.)

29.    In its April 8, 2025 "Appeal Filed Under Good Cause Extension", QRS described the extraordinary events greatly effecting the day-to-day operations at its corporate offices located in Arcadia, California, and its reasons for filing the two appeals beyond the regulatory filing deadline as follows:  (a copy of that letter for each of the two FYE appeals submitted on behalf of Plaintiff attached hereto as **Exhibits B-1 and B-2**. The letters are identical in substance)

> "In January of 2025, QRS headquarters was subject to emergency evacuation orders due to the Eaton fire disaster. Additionally, the disaster resulted in employees having to flee their homes, with one key employee's home being destroyed by the conflagration.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

> Due to the emergency conditions created by the fire disaster and its extensive impact on operations, manual operations recovery procedures caused several Board-issued deadlines to be missed, including the filing of the appeal. QRS apologizes for any inconvenience and respectfully requests that the Board accept this appeal as timely under the good cause provisions pursuant to 42 C.F.R. § 405.1836, and PRRB Rule 2.1.4. QRS believes that allowing the Provider to file an appeal under these provisions would be a reasonable remedy to these extraordinary circumstances."

Both letters submitted to the Board were signed by the President of QRS, Mr. James Ravindran.

30.    In its Denial of Good Cause for Late filing and Dismissals letter (Exh. A), the Board cited 42 CFR 405.1836(b) which states:

> The Board may find good cause to extend the time limit **only if the provider demonstrates in writing it [could] not reasonably be expected to file timely due to extraordinary circumstances beyond its control** (such as a natural or other catastrophe, fire, or strike), and the provider's written request for an extension is received by the Board within a reasonable time (as determined by the Board under the circumstances) after the expiration of the applicable 180-day limit specified in § 405.1835(a)(3) . ..

31.    Rather than addressing *this* particular matter before the Board, and taking the time to respond in its own words, it chose instead to remind Plaintiff and his representative that on April 21, 2025, it issued a determination regarding a request for Good Cause Extension in sixty-two cases where QRS filed a similar "justification."  Quoting its determination in that other, non-associated matter in Exhibit A;

> ". . . while the requests for good cause extension refer generally to the California wildfires, the requests fail to provide any specific "relevant information and documents 'demonstrat[ing] . . . [the provider] could not be expected to file timely due to extraordinary circumstances beyond its control.'" There is a dearth of "relevant information" or "documents" accompanying the requests; in fact, there are no documents

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

accompanying the requests, not even an official emergency declaration, news report, or map.”

32.   The Board's determination in that earlier, unrelated April 21, 2025 appeal went on to note that QRS' requests were devoid of detail regarding the operational challenges, in that they lacked specifics about how the QRS office was affected by the wildfires (e.g., building damage, power outages, access to the site). The Board also pointed out that QRS has various office locations in areas that were not impacted by the wildfire, so it was unclear why an employee in one of the other offices couldn't have filed the appeal or requested an extension while the California-based employees were unavailable. The Board also questioned why QRS “was able to complete some of its work and file some appeals timely, but was unable to file all appeals timely.” (Ex. A at 3)

33.   Sadly and showing not an ounce of consideration less empathy for the victims of, and those affected by the historic Los Angeles County wildfire of January, 2025, including those staffed at the corporate offices of QRS adjacent to one area of evacuation,  the Board found that the rationale it set forth in its April 21, 2025 Denial of Good Cause letter in the other, *non-related* cases was applicable in Plaintiff's instant appeals:

> “QRS again relied on the “generic fire explanation” as the basis for its Request for Good Cause Extension and again the Board finds this not to be an adequate justification. As in its prior determination, the Board bases its determination on the fact that QRS was able to accomplish its operations in numerous other cases during the time-period in question. **QRS has six other offices that are NOT located in the fire zone** and, QRS has provided no documentation of the actual disruption to its Arcadia office caused by the fire or any explanation as to how operations in its other offices were disrupted. (Ex. A at 4) (emphasis added).

34.   In a remarkable demonstration of presumption without information to based such upon, the Board had the audacity to point out that QRS had other offices located elsewhere and implied that the work being conducted at its corporate headquarters in Arcadia, California should have been dispersed to one or more of its other non-affected facilities. That is bold and totally incorrect. Indeed, QRS has only ONE corporate office; the other, several satellite offices are housed by

12

consultants and little support staff performing work on many matters not overseen by the corporate office.

35.    Moreover, those corporate offices of QRS is located at 150 North Santa Anita Avenue in the city of Arcadia. Arcadia is one of several communities that border Alta Dena and the location of the Easton wildfire. Though the Board based a part of its denial for extension on the fact that QRS did not offer, in one example a single map in its Request for Filing Extension plea (Ex. B1-2), had a Board staffer retrieved or googled a map of southern California, it would have discovered that QRS's corporate office was just seven miles from the core of the Eaton fire. The clear commotion that the Eaton fire created in the immediate fire zone vicinity, including the city of Arcadia, could be quite frankly imagined if one cared to consider it. There are apparent if not obvious repercussions of any disaster of this magnitude, particularly in the back yard of a company's situs, but the Board chose to turn a blind eye, instead inquiring why more information and documentation, including maps was not included.

36.    Perhaps the Board made the ultimate showing of preposterousness as, while surely aware that a provider representative such as QRS is retained by the provider to perform quite literally all aspects of and tasks required for that provider's administrative appeals once initiated, the Board queried:

> "**Indeed, both individual appeals are for CMC Northeast, which is located in Concord, North Carolina -NOT California**. It is not clear how a fire near one of the eight QRS locations (six of which are in other states), could make its entire operation unable to continue working, nor is there sufficient explanation for such an argument (Ex. A at 4) (emphasis added).

The illogic of that statement in bold should be obvious. Moreover, as noted, *supra,* the remaining comments assume that the Board has knowledge of the division of work, assignments, work load,

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

responsibilities, technical capabilities and inter-facing of the QRS corporate office's other offices. Plaintiff's hunch is that it surely does not.

37.    Based upon the Board's disregard for Plaintiff's dilemma as expressed through its representative, QRS, it determined that the late filing of Plaintiff's appeals was inexcusable and unreasonable, and thereupon dismissed Plaintiff's two case appeals.

38.    The Board's discretionary decision making by and through its conduct in addressing Plaintiff's request for an extension of the filing deadline under the circumstances described above was arbitrary, capricious and an abuse of its discretion.

## COUNT I

39.    Plaintiff hereby incorporates by reference paragraphs 1 through 38 of the Complaint as though fully set forth herein.

40.    The provisions of 42 C.F.R. § 405.1853 unambiguously give the Board discretion to extend deadlines for the submission of papers, including a provider's filing of its appeal. If the Board was even remotely aware of the possible impact of the LA wild fires on QRS and its offices in Arcadia (southern California), they might assume that such an enormously impactful disaster could and did effect the day-to-day work schedule of staffers at QRS corporate offices for several weeks, some of whom were required to evacuate their nearby residences, including the owner of QRS.

41.    Yet even should it be the case that not a single Board member recognized that QRS's corporate location was in close proximity to the Eaton fire, the Board's own Rule 47.3, providing that administrative oversights can be set aside upon the provider's demonstration of "good cause", the circumstances herein should surely qualify as an understandable "oversight".

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

42.     The Board's decision to dismiss Plaintiff's appeals, was arbitrary and capricious in violation of 5 U.S.C. §706(2) by failing, in good faith, to adhere to its own promulgated Rules and failing to exercise its sound discretion by not inquiring further of Plaintiff for a showing of additional good cause why the Board should not dismiss the appeals. Indeed, in this very instance. With the combination of all the aforementioned factors, is the dismissal of appeals involving the potential recovery hundreds of thousands of additional dollars in Medicare DSH reimbursement the *appropriate remedy and/or exercise of sound discretion?*

43.     Finally, the applicable provisions of the Administrative Procedure Act provides that the "reviewing court shall... hold unlawful and set aside agency action… found to be (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … (c) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right; (d) without observance of procedure required by law; or (e) unsupported by substantial evidence. 5 U.S.C. §706(2).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for an Order:

(a)  Reversing and setting aside the PRRB decision to dismiss Plaintiff's appeals;

(b)  Remanding each appeal back to the Board for full adjudication on the merits;

(c)  Awarding the costs of suit incurred by Plaintiff;

(d)  Awarding Plaintiff interest as required by 42 U.S.C. § 1395oo(f)(2); and,

(e)   For such other and further relief as the Court may deem just and proper under the circumstances.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

DATED:  May 23, 2026      Respectfully submitted,


            /s/Alan J. Sedley
            Alan J. Sedley, Esq. Bar# OH0017
            ALAN J. SEDLEY LAW CORP.
            18880 Douglas, Suite 417
            Irvine, CA  92612
            (818) 601-0098
            asedley@sedleyhealthlaw.com

            *Attorneys for Plaintiff*

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**GENERAL BACKGROUND OF THE MEDICARE PROGRAM**

10.    Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395kk-1(a)(3)(B). The amount of Medicare Part A payment owed to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS. *See* 42 C.F.R. § 405.1803.

4.    Effective with cost reporting years beginning on or after October 1, 1983, hospitals are reimbursed under the Hospital Inpatient Prospective Payment System ("IPPS") for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F).

5.    Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients. These higher costs have been found to result in part from the poorer health of those patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing such services.

6.    Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. §

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

1395ww(d)(5)(F). The DSH program was in effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

7.      There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" and the less common "Pickle method." See 42 U.S.C. § 1395ww(d)(5)(F)(i)(I)-(II). Plaintiff Hospital's DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on a hospital's disproportionate patient percentage (hereinafter, "DPP"). 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vi).

8.      The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). 42 U.S.C. § 1395ww(d)(5)(F)(vi). Thus, the two fractions serve as a "proxy" of a hospital's low-income patients, rather than having CMS count the actual number of those patients.

9.      The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients whilst *also* being entitled to Supplemental Security Income ("SSI") benefits, a federal low-income supplement. The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.

10.     The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

11.     The Medicaid Fraction, therefore, is intended to account for hospital inpatients "…who were not entitled to benefits under [Medicare] [P]art A," who were "…eligible for medical assistance…" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital. The Medicaid Fraction is at issue in this case.

12.     The statute further provides for purposes of determining the Medicaid Fraction "…the Secretary may, to the extent and for the period the Secretary determines appropriate, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under subchapter XI." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). Patient days of patients who receive benefits under a demonstration project approved under subchapter XI of the Social Security Act are commonly referred to as "section 1115 waiver days" (because of the Secretary's waiver or demonstration project authority under section 1115 of the Social Security Act). The Secretary's non-inclusion of section 1115 waiver days in Plaintiff Hospital's Medicaid Fraction for its 2017 fiscal cost year is at the heart of this action. As discussed, *infra.,* section 1115 waiver days *are* in fact Medicaid **eligible** days, and

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

need not be distinguished from any and all other Medicaid **eligible** days when presenting an appealable issue before the Board. (and *see, e.g., Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121, 122 (D.C. Cir. 2020) and CMS Change Request 12669, Transmittal No. 11912 (March 16, 2023). (Ex. B at 3).

## THE RELEVANT MEDICARE APPEALS PROCESS

13.     At the close of its fiscal year ("FY"), a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. For Medicare, each hospital's MAC is required to analyze and audit the hospitals annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital also is required to make a claim, or alternatively self-disallow, for any modification to its basic IPPS payment adjustment, such as the DSH adjustment.

14.     The Medicare Act provides that if a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in its NPR, and the hospital satisfies the amount in controversy requirements (not an issue in this case), the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of receiving its NPR (or any revised NPR). 42 U.S.C. § 1395oo(a). The statute allows a hospital that is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of 42 U.S.C. § 1395ww to obtain a PRRB hearing by requesting the hearing within 180 days after notice of the Secretary's final determination. 42 U.S.C. § 1395oo(a)(1)(A)(ii), (a)(3).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

15. The regulations interpret the statutory requirements by stating that "…the date of receipt by the Board of the provider's hearing request must be no later than 180 days after the date of receipt by the provider of the final contractor or Secretary determination." 42 C.F.R. § 405.1835(a)(3).

16. In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction and procedure. The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877. The Secretary has delegated authority under the statute to review PRRB decisions to the CMS Administrator. Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

17. A hospital may obtain judicial review by filing suit in the U.S. District Court for the judicial district in which the hospital is located within 60 days of receipt of the Secretary's final administrative decision. 42 U.S.C. § 1395oo(f)(1). Pursuant to 42 C.F.R. § 405.1801(a)(1)(iii), the date of receipt by a party involved in proceedings before the PRRB is presumed to be five days after the date of issuance of a PRRB document.[2] As such, the deadline in this case to seek judicial review is April 12, 2026. This filing is therefore timely.

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

---

[2] Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. § 1395oo(f). Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within 30 days of a "final determination."

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

18.     Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "...shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "...reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "...reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

## LITIGATION OVER SECTION 1115 WAIVER DAYS AND THE SECRETARY'S ACQUIESCENCE IN FIFTH AND D.C. CIRCUIT DECISIONS

19.     In *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018), the Court rejected the Secretary's assertion that for hospital days under a section 1115 waiver to be included in the Medicaid Fraction, the terms of waiver agreement between the State Medicaid agency and the Secretary must contain an explicit statement that patients covered by the waiver are "…eligible for inpatient hospital services." *See id.* at 46. That Court disagreed. *See id.* at 46-47. According to the *HealthAlliance* court:

> [i]t is clear from the plain language of the regulation's text [at 42 C.F.R. § 412.106(b)(4)(i)] that patients who are eligible to receive comprehensive medical care through an insurance program authorized under a section 1115 waiver (as evidenced by their eligibility for inpatient hospital services) are to be included in the Medicare reimbursement formula, and whether or not the waiver agreement through which the Secretary authorized the program *says* anything about their eligibility for inpatient hospital services is irrelevant to the calculation of a hospital's disproportionate share hospital adjustment.

*Id.* at 47. This remains true in this dispute.

20.     A similar issue was presented in *Forrest General Hospital v. Azar*, 926 F.3d 221 (5th Cir. 2019). The Secretary claimed an uncompensated care pool related to Hurricane Katrina was not part of a section 1115 waiver. *See id.* at 232. In disagreeing, the Fifth Circuit found the

> …excellent opinion in *HealthAlliance Hospitals, Inc. v. Azar* extremely persuasive. That opinion convincingly explains why the law governing the inclusion of section 1115 waiver patient days in the Medicaid fraction is straightforward: the plain regulatory text demands that such days be included—period.

*Id.* at 234 (citations omitted). The Fifth Circuit also held that the statute was unambiguous and noted with respect to 42 C.F.R. § 412.106(b)(4) that, "[w]hat does *not* matter for purposes of this regulation is what the plan documents say about eligibility for particular services." *See Forrest General at* 228-229. Following *Forrest General*, the Secretary continued to litigate, and lose, the issue whether days associated with patients who were covered under a section 1115 waiver that included an uncompensated care pool, and which did not specifically mention inpatient hospital benefits, should be included in the Medicaid Fraction. *See, e.g., Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121, 122 (D.C. Cir. 2020).

21.     As a result of those losses, CMS issued guidance acquiescing to the Fifth Circuit and D.C. Circuit decisions. (*See* Ex. B). The manual instructions provide that upon a hospital submitting a listing of its section 1115 waiver days, the hospital's MAC must do the following:

> [f]or cost reports that are open via a [] (PRRB) appeal that has not yet been heard before the PRRB, [s]ection 1115 days will be reviewed through the normal Administrative Resolution process within 24 months of the CR implementation date. In order for the Medicare Administrative Contractor (MAC) to consider the providers' Section 1115 days in recalculation of the Medicaid fraction, the following review shall take place, only as deemed necessary by the Uniform Desk Review process or Administrative Resolution process:
>
>       1. For providers with patients whose inpatient stay is covered by a Section 1115 waiver program funding pool, which pays health care providers that provide uncompensated care to patients who are uninsured or underinsured and is matched by Title XIX federal funds, the MAC shall review the State's Section 1115 program

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

documents to determine the method by which the provider identifies eligible inpatient stay days.

2. The MAC shall select a sample of accounts from the provider's submitted Section 1115 log for further review.

3. The MAC shall request documentation from the provider for the selected sample and review the documentation to ensure that: a) the provider has accurately included the inpatient stay in the Section 1115 waiver program for reimbursement through the funding pool based on the provider's Section 1115 approved program documents; and b) has accurately included the inpatient stay on the Section 1115 log.

4. The MAC shall review the provider's applicable documentation that details the patient's length of stay and the acute-care unit that the patient's stay occurred to verify the patient's length of stay in an inpatient acute section of the hospital.

(*Id* at 4).

22.    In the FY 2024 IPPS rulemaking, the Secretary proposed and finalized new and restrictive regulations on including section 1115 waiver days in the Medicaid Fraction; however, these regulations are prospective only. *See* 88 Fed. Reg. 58,640, 59,017 (Aug. 28, 2023) ("Finally, we are finalizing as proposed that our revised regulation would be effective for discharges occurring on or after October 1, 2023").

## SPECIFIC FACTS PERTAINING TO THIS CASE

A.    *Dismissal of Section 1115 Waiver Days "Issue"*

23.    On June 5, 2020, the MAC issued an NPR for Plaintiff's cost year ending June 30, 2017. On November 24, 2020, the Board received Plaintiff's individual appeal request (attached with issue-specific documents as **Exhibit C**), appealing its DSH adjustment. Plaintiff timely appealed the MAC's non-inclusion of Medicaid eligible days, stating that "[t]he MAC, contrary to the regulation, failed to include *all Medicaid eligible days, including but not limited to* Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation." (Ex.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

A at 4, Ex. C at 10) (emphasis added). The italicized language above demonstrates that Plaintiff appealed *all* Medicaid eligible days, which by definition ***included*** section 1115 waiver days.

24.    Notwithstanding the noted language, on February 26, 2026 the Board dismissed Plaintiff's appeal of what it termed the "section 1115 Waiver days issue." (Ex. A at 12). The Board provided one primary reason for its dismissal, stating "[b]ecause the Provider did not raise the Section 1115 Waiver days prior to the deadline to add issues, and it is a distinct issue, the Board finds that the issue was not properly or timely appealed. The DSH Medicaid Eligible Days issue as stated in the original appeal request cannot be construed to include Section 1115 Waiver days." That is, the Board contends section 1115 waiver days are not Medicaid eligible days but are instead a separate and distinct issue which, the Board claimed, the Provider failed to include in its initial appeal request. (Ex. A at 15).

25.    The Board proffered several alternative rationales to support its decision, but all fail to do so. *See id.* It claimed that: (1) "…there is no indication that any 1115 waiver days were included with the as-filed cost report which, if true, would make them an unclaimed cost and provide an independent basis for dismissal;" (2) "…even if the Provider had included in its appeal request (which it did not), the Provider failed to properly develop the issue in its [preliminary] position paper filing[]",  "the Provider's preliminary position paper does not even mention § 1115 waiver days…", and (3) "…even in the Provider's final position paper, the Provider fails to identify what § 1115 waiver program(s) are involved and whether or not the § 1115 waiver days at issue would qualify under 42 C.F.R. § 412.106(b)(i)-(ii) as 'days attributable to populations eligible for Title XIX matching payments through a waiver approved under section 1115 of the Social Security Act' and the patients underlying those days are 'deemed eligible for Medicaid' based on 'the patient [being] eligible for inpatient hospital services . . . under a waiver authorized under section

1115(a)(2) . . . on that day, regardless of whether particular items or services were covered.' Rather, the final position paper is perfunctory in that it only makes perfunctory conclusions. [n. 26]" (Ex. A at 15).

26.     In footnote 26 of its dismissal, the Board questioned specific language in Plaintiff's final position paper submitted on November 25, 2025 (attached as **Exhibit D**), stating:

> [f]or example, QRS [*i.e.*, Plaintiff's representative] cites to *Forrest General Hosp.*, 926 F.3d 221 (5th Cir. 2019) for the proposition that 'the plain language of the statute and [the] regulations require[s] inclusion in the Medicaid Fraction of the days belong[ing] to individual[s] who are included in a section 1115 demonstration project that provides benefits through an uncompensated care pool.' However, QRS fails to explain why this sweeping statement is relevant to the § 1115 waiver days at issue. Is QRS asserting that the § 1115 waiver days at issue relate to an uncompensated care pool? Is that pool similar to that in *Forrest General Hosp.*? QRS fails to brief the merits of its claims and fails to establish the Board's jurisdiction over the § 1115 waiver day issue as required by 42 C.F.R. §405.1853(b)(2). Indeed, the quoted sentence is the only time the final position paper references 'uncompensated care pool.'

(Ex. A at 15, n. 26; *see* Ex. D at 12). The rhetorical questions posed by the Board in its note 26, *supra,* are meant to place an excessive and illogical burden upon providers and representatives; that is to say, while the Board should be addressing reasonable expectations for the content of a position paper, it seems to justify imposing upon providers, including Plaintiff, unreasonably exhaustive and expansive expectations more akin to a motion for summary judgment filing in a civil court proceeding. Moreover, the Board relies upon a fabricated differentiation unsupported by any statutory language, claiming that "…section 1115 Waiver days are not *traditional* Medicaid eligible days…" in support of its contention that such waiver days are somehow an issue that must be regarded and therefore addressed as "separate and distinct" from all other Medicaid eligible days. (emphasis added). (See, Ex. A at 15). To be clear, a *Medicaid eligible* day that the Board conveniently distinguishes as either being *traditional or not traditional* for purposes of deciding the adequacy of a provider's presentment of its appeal is simply not the legal standard that should

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

logically be imposed. Rather, whether a patient day is deemed an Medicaid "*eligible*" day is the *sole* and appropriate standard required, as set forth within applicable law and regulations. (*See*, *Bethesda Health, Inc., v. Azar*,[3] *supra.*, and CMS Transmittal 11912, Change Request 12669, Ex. B at 3).

### B.    *Substantial Evidence Supports Plaintiff's Position*

27.    As mentioned *supra,* "…the law governing the inclusion of § 1115 waiver patient days in the Medicaid fraction is straightforward: The plain regulatory text demands that such days be included—period."[4] This statutory and regulatory interpretation was affirmed by the court in *Bethesda Health Inc., v. Azar*,[5] and was accepted by CMS in its publication of Change Request 12669, Transmittal No. 11912 (March 16, 2023). (Ex. B at 4). As such, there is no statutory difference between section 1115 waiver days and Medicaid eligible days in terms of their inclusion in the numerator of the Medicaid Fraction and administrative appeals thereof.

28.    The Board's distinction of a purely *fictional* "section 1115 Waiver days issue" was disingenuous (emphasis added). The issue properly before the Board in Plaintiff's administrative appeal was the inclusion of all Medicaid eligible days for purposes of calculating DSH reimbursement, which would definitionally include section 1115 waiver days.

29.    The regulations at 42 C.F.R. § 405.1835 contain requirements for appealing an issue and a time limit on adding an issue – not on "sub-issues"[6] or "components" of an issue. Both a June 25, 2004, proposed rule (69 Fed. Reg. 35,716) and a May 23, 2008, final rule (73 Fed. Reg. 30,190) support that an "issue" is encapsulated by a specific cost report adjustment. They do not

---

[3] *Bethesda Health Inc., v. Azar*, 389 F. Supp. 3d 32, (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020)
[4] *Forrest General Hospital v. Azar*, 926 F.3d 234 (5th Cir. 2019) (referring to the opinion in *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018)).
[5] *Bethesda Health Inc., v. Azar*, 389 F. Supp. 3d 32, (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020)
[6] The Board claims it dismissed the "*alleged* § 1115 waiver days sub-issue" of Plaintiff's administrative appeal. (Ex. A at 15) (emphasis in original).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

slice and dice an "issue" into component parts, including the specific reason why Medicaid eligible days were not counted in the numerator of the Medicaid Fraction of the DPP.

30.    For example, the proposed rule states that:

> … to preserve its appeal rights, a provider must either claim an item on its cost report where it is seeking reimbursement that it believes to be in accordance with Medicare policy, or self-disallow the item where it is seeking reimbursement that it believes may not be in accordance with Medicare policy … Note that we are using the term "item" instead of "cost" to emphasize that our proposed policy would refer to determinations of amounts due to providers subject to a prospective system as well as determinations of reimbursement due to providers that are paid under cost reimbursement principles.

69 Fed. Reg. at 35,722. Similar language appears in the final rule at 73 Fed. Reg. 30,194. A MAC's cost report determination is synonymous with an "adjustment." In this case, the same adjustment to so-called "*traditional* Medicaid eligible days" also governs Medicaid eligible days associated with beneficiaries covered under a section 1115 waiver. (Ex. A at 14). To the extent that the regulations were interpreted as requiring providers to appeal "sub-issues" or "components" of issues, the regulations would impermissibly restrict the PRRB's jurisdiction as set forth in the statute.

### C.    *The Board's Rule 8 Is Arbitrary and Invalid*

31.    Rule 8 of the August 29, 2018, version of the PRRB Rules—which provides that "…each contested component must be appealed as a separate issue…"—is internally inconsistent with Rule 7. Whereas Rule 8 refers to "components" of an issue, and gives section 1115 waiver days as an example, Rule 7.2.1 provides that, for purposes of identifying the "issue" under appeal, the provider needs to submit an "issue title and a concise issue statement…" that describes the cost report adjustment, including the cost report adjustment number, the controlling authority, why the cost report adjustment is incorrect, how the payment should be determined differently, the

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

reimbursement effect, and the basis for jurisdiction before the PRRB. (*See* Ex. A at 13). **Thus, Rule 8 is inconsistent with both the regulations *AND* Rule 7.**

32.     Notwithstanding the paradoxical nature of PRRB Rules 7, 8, and the underlying regulations, in accordance with Rule 7.2.1 of the August 29, 2018, version of the PRRB Rules, the Provider appealed the "Disproportionate Share Hospital Payment - Medicaid Eligible Days" issue with respect to adjustment numbers 5, 9, 10, 11, 44, 45, and s-d from the adjustment report issued by the Provider's designated MAC in connection with the Provider's FY 2017 cost report. The s-d adjustment refers to all items self-disallowed or protested on the Provider's cost report, which includes a protested amount relating to an understated amount of Medicaid eligible days, specifically section "1115 waiver days," in the Provider's Medicaid Fraction. (*See* Ex. C at 7, 10-15).

33.     Whereas Rule 7 directs providers to Rule 8, Rule 8 directs the providers to Rule 7, making this type of circular reasoning a thinly veiled attempt to obfuscate providers rather than enlighten them. Indeed, all that is served by that confusion is an endless loop of inconsistent propositions, creating ambiguity and logically flawed explanations that leaves providers baffled.

34.     Moreover, Rule 8 is predicated on the supposed need "[t]o comply with the regulatory requirement…" regarding specifically identifying the items in dispute. Rule 8 proceeds from the misunderstanding that the regulations require "components" of an issue must be identified, when in fact, and as explained above, this is not true. For this reason alone, Rule 8's requirement to identify "components" of an issue is arbitrary and capricious, thus, invalid.

35.     The supposed requirement that a provider go further and specify not only DSH reimbursement, and not only the Medicaid eligible days portion of such reimbursement, but also the section 1115 waiver days component of Medicaid eligible days, is not found in the statute, but

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

only in the PRRB rules. The Board has no authority to expand or constrict its jurisdiction given to it by Congress. Its requirement that providers must describe "components" of issues simply to obtain a hearing conflicts with the statute and is facially invalid.

36.     In *Azar v. Allina Health Services et al.*, the Supreme Court held "…the phrase 'substantive legal standard,' which appears in § 13955hh(a)(2) and apparently nowhere else in the U. S. Code, cannot bear the same construction as the term 'substantive rule' in the APA…" and that a new policy that establishes or changes a "substantive legal standard" that affects Medicare benefits must be subject to the statutory process of public notice-and-comment rulemaking. *See Azar v. Allina Health Services et al.*, 587 U.S. 566, 579, (2019); *see also* 42 U.S.C. § 1395hh(b). The Supreme Court did not disturb the D.C. Circuit's holding below that "…the Medicare Act requires notice-and-comment rulemaking for any (1) 'rule, requirement, or other statement of policy' that (2) 'establishes or changes' (3) a 'substantive legal standard' that (4) governs 'payment for services.'" *Allina Health Servs. v. Price*, 863 F.3d 937, 943 (D.C. Cir. 2017). Nor did it disturb the D.C. Circuit's holding that "'[s]ubstantive law' is law that 'creates, defines, and regulates the rights, duties, and powers of parties.'" *Id*.

37.     Rule 8 of the August 29, 2018, version of the PRRB Rules—in effect at the time of this appeal and acts as a logical extension of Rule 8 of the August 21, 2008, version of the PRRB Rules—specifies that certain issues must be appealed separately. Rule 8 of the August 21, 2008, version of the PRRB Rules changed a "substantive legal standard" with respect to payments under the Medicare Act because it defines or regulates the rights of providers to proceed before the PRRB. As such, it should have but did not go through notice-and-comment rulemaking, and it along with all subsequent versions of Rule 8 are therefore invalid under clear Supreme Court precedent. *See*, *e.g.*, *Allina Health Services et al.*, 587 U.S. at 579.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

D.      *The PRRB's Alternative Reasons for Dismissal were Arbitrary and Capricious*

38.      First, the PRRB's assertion that it was an independent basis for dismissal that "…there is no indication that any 1115 waiver days were included with the as-filed cost report…" was arbitrary and capricious, especially because MACs frequently accept days identified *after* the cost report is filed. (Ex. A at 15). The total count of Medicaid eligible days is a variable aspect of a hospital's cost report that depends on factors that can change after the hospital's initial cost report is filed. The inherent retroactive nature of Medicaid eligibility determinations means that a provider will never know who are Medicaid patients at the time of admission. As is the case with other Medicaid eligible days, the treatment of this variability likewise applies to section 1115 waiver days.

39.      Second, with respect to the proper development and identification of "…the specific [section] 1115 waiver program(s) at issue…" in Plaintiff's preliminary and final position papers, the Board's citation to and reliance on 42 C.F.R. §§ 405.1853(b)(2)-(3), 42 C.F.R. § 412.106(b), and Board Rules 25 and 27 to support its decision was arbitrary and capricious. (Ex. A at 15). 42 C.F.R. §§ 405.1853(b)(2)-(3), in pertinent part, provides only:

> (2) Each position paper must set forth the relevant facts and arguments regarding ... the merits of the provider's Medicare payment claims for each remaining issue.

> (3) Exhibits regarding the merits of the provider's Medicare payment claims may be submitted in a timeframe to be decided by the Board through a schedule applicable to a specific case or through general instructions.

Nothing in the regulation requires a provider to identify "…the specific [section] 1115 waiver program(s) at issue…" with its position papers.

40.      Moreover, 42 C.F.R. § 412.106(b) pertains only to requirements for whether days should be counted *by the MAC* as Medicaid-eligible in a hospital's DSH calculation, not requirements for the Board's jurisdiction over the Provider's appeal. Similarly, neither Board Rule

25 nor 27 require identification of the "…the specific [section] 1115 waiver program(s) at issue." (Ex. A at 15). The Board's appeal to this supposed requirement was disingenuous at best as there was, during the fiscal year under appeal and when Plaintiff Hospital's appeal was filed, *only one Kansas Section 1115 waiver program*, the KanCare program. (*See* CMS Special Terms and Conditions, attached as **Exhibit E**, at 59-64).

41.     Plaintiff, in support of the inclusion of section 1115 waiver days in its Medicaid Fraction, explained in its final position paper that "CMS has acquiesced in *Bethesda* and is now following the statute and the plain meaning of its own regulations (which regulations represent the official policy of CMS all along) and [should be] properly accounting for 1115 Waiver days as Medicaid Eligible days. *See* CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023) ('Transmittal 11912'), attached as Exhibit P-4." (Ex. D at 12). The Board included only the first of three court opinions cited by Plaintiff[7] when discussing the inclusion of section 1115 waiver days in its Medicaid Fraction to demonstrate that Plaintiff's final position paper failed "…to brief the merits of its claims and fails to establish the Board's jurisdiction over the § 1115 waiver day issue as required by 42 C.F.R. § 405.1853(b)(2)." (Ex. A at 15, n. 26).

42.     The D.C. Circuit's *Bethesda* opinion, as well as the *Forrest General Hospital* and *HealthAlliance Hospitals, Inc.* opinions cited as "well-reasoned" therein, directly support Plaintiff's claim regarding the merits of the inclusion of section 1115 waiver days in its Medicaid Fraction. *See Bethesda Health Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020). CMS's acquiescence to the D.C. Circuit's holding in *Bethesda* in its March 16,

---

[7] The Board excluded Plaintiff's secondary and tertiary citations following *Forrest General Hosp.*, 926 F.3d 221 (5th Cir. 2019), namely *HealthAlliance Hospitals, Inc. v. Azar*, 346 F. Supp. 3d 43(D.D.C. 2018) and *Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32, (D.D.C. 2019), *aff'd*, 980 F.3d 121 (D.C. Cir. 2020). (Ex. D at 12).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

2023 publication further establishes the Board's jurisdiction over the section 1115 waiver days at issue as part of the Medicaid Eligible Days issue, contrary to the Board's assertion that it is a "distinct issue." (Ex. A at 15).

43.    Finally, the Board's comparison of Plaintiff's language in its initial appeal and final position paper to the provider's language in *Evangelical Community Hospital, et al. v. Becerra* misses the mark. Plaintiff does indeed "…specify which portion of the calculation was incorrect…" and "…how the fraction should have been calculated differently…" in its initial issue statement stating that, "[t]he MAC, contrary to the regulation, failed to include **all Medicaid eligible days**, **including but not limited to** Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation." (Ex. A at 4, 16, Ex. C at 10) (emphasis added).

44.    Further, Plaintiff stated in its final position paper that its "…issue is whether the [MAC] included in the Provider's Medicaid Fraction of the disproportionate patient percentage all Medicaid eligible days (including section 1115 waiver days)," specifically stating that, "[b]ased on the Listing of Medicaid Eligible days being sent under separate cover directly to the MAC, including Section 1115 waiver days (redacted copy is attached), the Provider contends that the total number of days reflected in its 2017 cost report does not reflect an accurate number of Medicaid eligible days, as required by HCFA Ruling 97-2 and the pertinent Federal Court decisions." (Ex. D at 12).

45.    Additionally, Plaintiff submitted a supplemental filing containing a redacted version of the listing of Medicaid eligible days it contends should be included to the Board (supplemental filing attached as **Exhibit F**) shortly before the submission of its final position paper, titled "1115 Waiver and Additional ME Days Consolidated." (Ex. F at 3-46). It is clear,

therefore, that the provider's language criticized as lacking "…the requisite specificity…"[8] by the court in the *Evangelical Community Hospital* opinion is incomparable to Plaintiff's language in its initial appeal request and final position paper, thus the Board's appeal thereto is arbitrary and capricious.

E.    Dismissal of DSH Payment - Medicaid Eligible Days Issue

46.    The Board dismissed the DSH Payment - Medicaid Eligible Days issue stating that "Specifically, the Board finds that the Provider has failed to satisfy the requirements of 42 C.F.R. § 412.106(b)(iii) [sic] and 405.1853(b)(2)-(3) and Board Rules 25.2.1 and 25.2.2 related to the submission of documentary evidence required to support its claims or describe why said evidence is unavailable." (Ex. A at 11).

47.    The Board's dismissal of the DSH Payment - Medicaid Eligible Days issue was also due to it finding "…that the Provider also failed to fully develop the merits of the Medicaid eligible days issue because the provider has failed to identify any specific Medicaid eligible days at issue (much less any supporting documentation for those days)." (*Id*. at 11).

48.    The Board further stated that:

> …pursuant to 42 C.F.R. § 412.106(b)(iii) [sic], the Provider has the burden of proof "to prove eligibility for *each* Medicaid patient day claimed" {(Emphasis added.)] and, pursuant to Board Rule 25, the Provider has the burden to present that evidence as part of its position paper filing unless it adequately explains therein why such evidence is unavailable. As the Provider failed to identify even a single Medicaid eligible day as being in dispute as part of the position paper filing (much less provide the § 412.106(b)(iii) [sic] supporting documentation), notwithstanding its obligations under 42 C.F.R. §§ 412.106(b)(4)(iii) [sic] and 405.1853(b)(2)-(3) and Board Rule 25, the Board must find that there are no such days in dispute and that the actual amount in controversy is $0.

(Ex. A at 12) (emphasis in original).

---

[8] No. 21-cv-01368, 2022 WL 4598546 (D.D.C. Sep. 30, 2022).

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

F.      *The Secretary's Actions Violate the APA and Other Authorities*

49.     Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "…shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "…reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "…reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

50.     By the Secretary's own regulations regarding position papers as mentioned previously, 42 C.F.R. §§ 405.1853(b)(2)-(3) provides only:

> (2) The Board has the discretion to extend the deadline for submitting a position paper. Each position paper must set forth the relevant facts and arguments regarding the Board's jurisdiction over each remaining matter at issue in the appeal (as described in § 405.1840 of this subpart), and the merits of the provider's Medicare payment claims for each remaining issue.
>
> (3) In the absence of a Board order or general instructions to the contrary, any supporting exhibits regarding Board jurisdiction must accompany the position paper. Exhibits regarding the merits of the provider's Medicare payment claims may be submitted in a timeframe to be decided by the Board through a schedule applicable to a specific case or through general instructions.

This regulation does not require providers to enumerate in position papers the specific Medicaid eligible days at issue, which are important to the MAC's, but not the PRRB's, adjudication. As stated above, 42 C.F.R. §§ 405.1853(b)(2)-(3) simply requires position papers to set forth the "relevant facts and arguments" regarding Board jurisdiction and the merits, with supporting exhibits.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

51.     The Board's references to the Provider's obligations under 42 C.F.R. § 412.106(b)(4)(iii) are similarly unavailing. The Board is presumably referring to 42 C.F.R. § 412.106(b)(4)(**iv**), which provides that for the purposes of the *MAC's calculation of the Medicaid Fraction*, the following applies:

> (iv) The hospital has the burden of furnishing data adequate to prove eligibility for each Medicaid patient day claimed under this paragraph, and of verifying with the State that a patient was eligible for Medicaid during each claimed patient hospital day.

Notwithstanding the Board's mistake, section 412.106 relates *only* to a provider furnishing data *to the MAC* for its DSH computation, and not to any requirement of what must be filed with the Board. Neither 42 C.F.R. § 412.106(b)(4)(iii) nor §§ 405.1853(b)(2)-(3) required the Provider to submit specific Medicaid eligible days with its preliminary nor final position papers.

52.     Plaintiff also was compliant with PRRB Board Rules, which do not require identification of specific Medicaid eligible days. Board Rule 25 relates to the submission of documents necessary to support a provider's position. Board Rules specifically direct that protected health information or other personally identifiable information "is generally not necessary for documentation submitted to the Board." Board Rule 1.4. Identification of specific Medicaid eligible days, while necessary for the MAC's ultimate <u>audit</u> of the Provider's claims, was not necessary for the PRRB's consideration of the <u>issue</u>.

53.     Furthermore, the Board's supposed conclusion that the "…actual amount in controversy is $0," (Ex. A at 12), was arbitrary and capricious. Plaintiff's preliminary position paper (attached as **Exhibit G**) specifically listed the reimbursement impact of the Medicaid Eligible Days issue as "$965,091." (Ex. G at 19). Additionally, Plaintiff stated that its claim "…that the total number of days reflected in its' [sic] 2017 cost report does not reflect an accurate number

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

of Medicaid eligible days…" was "[b]ased on the Listing of Medicaid Eligible Days being sent under separate cover." (*Id*. at 12).

54. As stated *supra*, Plaintiff submitted a supplemental filing prior to its final position paper on November 25, 2025 as a response to the MAC's request for documentation issued on January 18, 2023 (request attached as **Exhibit H**), which included a redacted listing of Medicaid eligible days titled "1115 Waiver and Additional ME Days Consolidated" and sent an unredacted version of the same listing to the MAC on the same day via email (email attached as **Exhibit I**). (Ex. F at 2-46; Ex. I at 3). The same listing was also attached to Plaintiff's final position paper as "Exhibit P-1." (Ex. D at 15-65). The MAC's request for such listing was at best confusing, because it was addressed to an entirely different health system, Community Health Systems, and only included Plaintiff's administrative appeal in the table attached at the end of the letter.

55. The Board took issue with the November 25, 2025 supplemental listing, stating that "The Redacted Listing was 44 pages with hundreds of Medicaid eligible days. QRS' [sic] filing did not explain why the listing of so many days was being submitted at this late date. The Board notes that this filing was submitted ***more than four years past the deadline for including it with its preliminary position paper*** since the position paper deadline was **July 22, 2021**." (Ex. A at 11) (emphasis in original). The Board additionally noted "…that the listing submitted was still not finalized." *Id.*

56. Notwithstanding the fact that identification of specific Medicaid eligible days is not necessary for the Board's adjudication, Plaintiff cannot be expected to produce a listing of days that have not yet been confirmed by the State. Plaintiff contends that it is a known frequent occurrence of providers reporting difficulties and delays in receipt of timely data and verifications requested from many state Medicaid agencies. Given that Plaintiff submitted both its supplemental

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

filing as a response to the MAC's request and its final position paper with a listing of Medicaid eligible days pending receipt and verification of State eligibility data and the Board was aware of the verified unredacted version of said listing submitted to the MAC prior to the Board's dismissal on February 26, 2026, the Board had more than enough information to confirm jurisdiction and properly adjudicate the issue. Due to the Board's and MAC's flawed understanding of the inherent retroactive nature of Medicaid eligibility, it was arbitrary and capricious for the Board to disregard Plaintiff's submitted listings of additional Medicaid eligible days, find "…that the actual amount in controversy is $0," and dismiss Plaintiff's appeal.

## Count I

### Judicial Review Under the Medicare Act and the APA

**(The Board's Dismissal of the Section 1115 Days "Sub-Issue" was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

57.    Plaintiff incorporates paragraphs 1-62 of this Complaint by reference.

58.    The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id.* § 706(2)(E).

59.    The Board's dismissal of the section 1115 waiver days component of its appeal relating to Medicaid eligible days was ultra vires, arbitrary, capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

## Count II

### Judicial Review under 28 U.S.C. § 1331 and the APA

**(The MAC's Determination was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

60.    Plaintiff incorporates paragraphs 1-65 of this Complaint by reference.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

61.    The MAC's refusal to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023) and audit and accept the Plaintiff Hospital's section 1115 waiver days was a final determination for which there is no administrative appeal. Therefore, this Court has jurisdiction to hear Plaintiff's appeal of this final determination. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986).

62.    The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

63.    The MAC's refusal to comply with the Manual Instructions, which bound the MAC, was arbitrary, capricious, an abuse of discretion, and contrary to the Medicare Act.

## Count III

### Due Process Violation

64.    Plaintiff incorporates paragraphs 1-69 of this Complaint by reference.

65.    It has a property right under the Fifth Amendment of the U.S. Constitution that requires the Secretary and the Secretary's agents to follow their own rules and give pre-deprivation and fair notice to the Plaintiff Hospital.

66.    By imposing an unlawful requirement that the Plaintiff specifically identify "Section 1115 waiver days" in its appeal request, the Board deprived it of due process because that requirement was contrary to the Secretary's regulations and because the Board's rules in effect at the time the Plaintiff Hospital filed its appeal request for a Board hearing did not give prior and fair notice of such a requirement.

## Count IV

### Mandamus

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

67.    Plaintiff incorporates paragraphs 1-72 of this Complaint by reference.

68.    Under 28 U.S.C. § 1361, federal district courts have "…original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

69.    The Secretary and its agents have the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment and the Board has the non-discretionary duty to apply properly laws relating to its jurisdiction.

70.    The MAC has refused to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023). These instructions require the MAC to accept audit and accept verified section 1115 waiver days for any appeal pending before the Board.

71.    The Manual Instructions provide an independent legal basis, outside of the appeal before the Board, for the Plaintiff Hospital's section 1115 waiver days to be included in the Medicaid Fraction of its Disproportionate Payment Percentage.

72.    Plaintiff Hospital has exhausted its administrative remedies by demanding that the MAC audit and accept verified section 1115 waiver days.

## Count V

### All Writs Act

73.    Plaintiff incorporates paragraphs 1-78 of this Complaint by reference.

74.    The DSH payment at issue violated the Medicare Act and APA. Under the All Writs Act, 28 U.S.C. § 1651(a): "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

75.     This Court, properly seized of jurisdiction, should issue an order requiring CMS to make proper DSH payment to Plaintiff and pay appropriate underpayment interest thereon under 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

## Count VI

### Judicial Review Under the Medicare Act

**(The Board's Actions are Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Contrary to Law because Rule 8 is Procedurally Invalid)**

76.     Plaintiff incorporates paragraphs 1-81 of this  Complaint by reference.

77.     Under 42 U.S.C. § 1395hh(b): "…the Secretary shall provide for notice of the proposed regulation in the Federal Register and a period of not less than 60 days for public comment thereon."

78.     As there was <u>no</u> public notice-and-comment period for Rule 8 of the August 21, 2008, version of the PRRB Rules, the August 29, 2018, version of Rule 8 acts as a logical extension of the initial publication of Rule 8, and Rule 8 was indeed a change in the "substantive legal standard" regarding payment for services under the Medicare Act, PRRB Rule 8 is invalid, and the Board's implementation of the August 29, 2018 version of Rule 8 in this case was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

## Count VII

### Judicial Review Under the Medicare Act

**(Board Rule 8 and the Board's Application of it to Dismiss the Section 1115 "Sub-Issue" are Inconsistent with Regulation and Board Rule 7 and Not in Accordance with Law)**

79.     Plaintiff incorporates paragraphs 1-84 of this Complaint by reference.

80.     The Board only has the authority to make rules and establish procedures that are not inconsistent with statute or the regulations of the Secretary and that are necessary or appropriate to carry out the statutory provision authorizing the Board.

81.     Any requirement to identify components of issues is not in accordance with law. Any such requirement is not "necessary or appropriate to carry out the provisions" of the Medicare Act authorizing the PRRB appeals process and is inconsistent with statute and regulation.

82.     Moreover, the Board's requirement that providers must identify "sub-issues" or "components" of issues arbitrarily and capriciously denies providers, including Plaintiff Hospital, the appeal rights to which they are entitled by statute.

## Count VIII

### Judicial Review Under the Medicare Act and APA

### (The Board's Dismissal of the Medicaid Eligible Days Issue was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

83.     Plaintiff incorporates paragraphs 1-88 of this Complaint by reference.

84.     The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

85.     The Board's dismissal of the DSH Payment – Medicaid Eligible Days issue was arbitrary, capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

## Count IX

### Judicial Review Under the Medicare Act and the APA

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

**(The Board's Disregard of Plaintiff's Supplemental and Final Position Paper Filings was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

86.     Plaintiff incorporates paragraphs 1-91 of this Complaint by reference.

87.     The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

88.     The Board's total disregard of Plaintiff's supplemental and final position paper filings was arbitrary, capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Case 1:26-cv-01796-TSC   Document 1   Filed 05/23/26   Page 44 of 45

**REQUEST FOR RELIEF**

For all of the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order:

a.    Reversing the Board's dismissal of the Medicaid eligible days issue and the section 1115 waiver days component of the appeal;

b.    Directing the Secretary to direct its MAC to audit Plaintiff Hospital's listing of section 1115 waiver and Medicaid eligible days, accept all verified days, and include them in the Medicaid Fraction of Plaintiff Hospital's DPP for purposes of its DSH Adjustment;

c.    Awarding Plaintiff Hospital's costs and reasonable attorneys' fees, and for interest; and;

d.    For such other and further relief the Court deems just and proper.

44
COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

Dated: May 23, 2026                    Respectfully submitted,

                                       ALAN SEDLEY LAW CORPORATION

                                       By: */s/ Alan J. Sedley*
                                       Alan J. Sedley, Esq. Bay # OH0017
                                       18880 Douglas, Suite 417
                                       Irvine, CA 92612
                                       Phone: 818.601.0098
                                       asedley@sedleyhealthlaw.com
                                       *Attorney for Plaintiff*

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT